

Jon T. King
**THE FURTH FIRM LLP**
225 Bush Street, 15th Floor
San Francisco, CA 94104-4249
Telephone:     (415) 433-2070
Facsimile:     (415) 982-2076

Jayne A. Goldstein
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle
Suite 216
Weston, FL 33326
Telephone:     (954) 515-0123
Facsimile:     (954) 515-0124

Natalie Finkelman Bennett
**SHEPHERD, FINKELMAN, MILLER**
**& SHAH, LLC**
35 East State Street
Media, PA 19063
Telephone:     (610) 891-9880
Facsimile:     (610) 891-9883

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

FRED J. GENTILE, Individually and on
Behalf of all Others Similarly Situated

        Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD.;
SAMSUNG SEMICONDUCTOR, INC.;
TOSHIBA CORPORATION;
TOSHIBA AMERICA CORPORATION;
TOSHIBA AMERICA ELECTRONIC
COMPONENTS, INC.; SANDISK
CORPORATION;  RENESAS
TECHNOLOGY CORPORATION; AND
RENESAS TECHNOLOGY AMERICA,
INC.

        Defendants.

Case No. 07-5349

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Fred J. Gentile, on behalf of himself and all others similarly situated, by and through his undersigned attorneys, brings this civil action against Defendants Samsung Electronics Co., Ltd.; Samsung Semiconductor, Inc.; Toshiba Corporation; Toshiba America Corporation; Toshiba America Electronic Components, Inc.; SanDisk Corporation; Renesas Technology Corporation; and Renesas Technology America, Inc (herein referred to collectively as "Defendants"). Plaintiff, upon knowledge as to matters relating to him, and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1.      This lawsuit is brought as a class action on behalf of all individuals and entities who indirectly purchased NAND flash memory (hereinafter "flash memory") manufactured by the Defendants, their predecessors or their controlled subsidiaries and affiliates, or their unnamed co-conspirators in the United States and elsewhere from January 1, 1999 through the present (the "Class Period"). Plaintiff alleges that during the Class Period, Defendants conspired to eliminate and suppress competition in the market for the sale of flash memory. More specifically, Defendants conspired to fix, raise, maintain, or stabilize prices for flash memory sold in the United States. As a result of Defendants' unlawful conduct, Plaintiff and the other class members indirectly paid artificially inflated prices for flash memory and, consequently, have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

2.      Plaintiff brings this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. §26, for injunctive relief, as well as reasonable attorneys' fees and cost of suit, for Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to recover damages under state antitrust and consumer protection laws.

3.      This Court has jurisdiction over the federal claim pursuant to 28 U.S.C. §§1331

2

and 1337.  The Court has supplementary jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) and 15 U.S.C. §22 in that at least one of the Defendants has offices in this District.  Venue is also proper in this District because the Defendants and their co-conspirators have committed acts in furtherance of the conspiracy in this District, and each Defendant has conducted business within this District, as have certain of Defendants' co-conspirators.

5.    Additionally, this Court has jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which, *inter alia*, amends 28 U.S.C. §1332 to contain subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any Defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.  *See* 28 U.S.C. 1332(d)(2) and (6).  This Court also has jurisdiction under 28 U.S.C. §1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state."

## PARTIES

6.    Plaintiff Fred J. Gentile is a resident of Broward County, Florida, and has indirectly purchased flash memory manufactured by one or more of the Defendants during the Class Period for end use and not for resale. As a result of Defendants' conspiracy, Fred J. Gentile has been injured because the price he paid was artificially raised to an anti-competitive level by Defendants and their co-conspirators.

7.    Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, South Korea.  Defendant Samsung Electronics Company, Ltd. produced, promoted, sold,

3

marketed, and/or distributed flash memory throughout the United States during the Class Period.

8.     Defendant Samsung Semiconductor, Inc. is a wholly owned subsidiary of Samsung Electronics Company, Ltd. and is incorporated in California with its principal place of business at 3655 North First Street, San Jose, California 95134.  Defendant Samsung Semiconductor, Inc. produced, promoted, sold, marketed, and/or distributed flash memory throughout the United States during the Class Period.  Defendants Samsung Semiconductor, Inc. and Samsung Electronics Company, Ltd. are herein referred to collectively as "Samsung."

9.     Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan.  Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed flash memory throughout the United States during the Class Period.

10.     Defendant Toshiba America Corporation is a wholly owned subsidiary of Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020.  Defendant Toshiba America Corporation produced, promoted, sold, marketed, and/or distributed flash memory throughout the United States during the Class Period.

11.     Defendant Toshiba America Electronic Components, Inc. is a wholly owned subsidiary of Toshiba Corporation with its principal place of business at 19900 MacArthur Blvd., Suite 400, Irvine, California 92612.  Defendant Toshiba America Electric Components, Inc. produced, promoted, sold, marketed, and/or distributed flash memory throughout the United States during the Class Period.  Defendants Toshiba America Electronic Components, Inc., Toshiba America Corporation, and Toshiba Corporation are herein referred to collectively as "Toshiba."

12.     Defendant SanDisk Corporation is a Delaware corporation with its principal place of business at 601 McCarthy Blvd., Milpitas, California 95035.  Defendant SanDisk Corporation

produced, promoted, sold, marketed, and/or distributed flash memory throughout the United States during the Class Period. Defendant SanDisk Corporation is hereinafter referred to as "SanDisk."

13.     Defendant Renesas Technology Corporation is a business entity organized under the laws of Japan with its principal place of business at Nippon Bldg., 2-6-2, Ote-machi, Chiyoda-ku, Tokyo 100-0004, Japan. Renesas Technology Corporation was established in April 2003 as a joint venture between Defendants Hitachi, Ltd. and Mitsubishi Electric Corp. During the time period covered by this Complaint, Defendant Renesas Technology Corporation sold, marketed or distributed flash memory to customers throughout the United States.

14.     Defendant Renesas Technology America, Inc. is a wholly owned and controlled subsidiary of Renesas Technology Corporation with its principal place of business at 450 Holger Way, San Jose, California, 95134-1368. During the time period covered by this Complaint, Defendant Renesas Technology America, Inc. sold, marketed and distributed flash memory to customers throughout the United States.

15.     The acts alleged herein were, upon information and belief, authorized, ordered or done by officers, agents, employees or representatives of each Defendant while actively engaged in the management of its business affairs.

16.     Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for flash memory made by its parent company.

## CO-CONSPIRATORS

17.     Various other firms, corporations, partnerships and/or individuals, domestic and/or foreign, who are presently unknown to Plaintiffs, participated as co-conspirators with the

Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

18.    Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through merger or acquisition.

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action under Rule 23, and particularly subsections (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and on behalf of all members of the following class (the "Class"):

> All persons or entities throughout the United States and its territories who indirectly purchased NAND flash memory or products containing NAND flash memory manufactured by any Defendant, for their own use and not for resale from at least January 1, 1999 to the present. The class of indirect purchasers of these products includes consumers and businesses that have purchased NAND flash memory and/or products containing NAND flash memory. Excluded from the class are all governmental entities, Defendants and their subsidiaries and affiliates.

20.    Plaintiff does not, as yet, know the exact number of class members. This information is in the exclusive control of the Defendants. Due to the nature of the trade and commerce involved, however, Plaintiff believes that class members are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all class members is impracticable.

21.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all class members were damaged by the same wrongful conduct of Defendants as alleged in the Complaint.

22.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to those of the other members of the Class, because Plaintiff is a typical indirect purchaser of flash memory. Additionally, Plaintiff has retained counsel who is competent and experienced in the prosecution of antitrust and complex class action litigation. Plaintiff will vigorously prosecute this case on behalf of the Class.

23.    There are questions of law or fact common to the class which predominate over any questions affecting only individual members of the class.  Such common questions include, but are not limited to the following:

a)    whether Defendants and others combined, conspired, or contracted to fix prices of flash memory at artificially high levels;

b)    the dates of the formation of this illegal contract, combination or conspiracy;

c)    the duration and extent of the contract, combination or conspiracy alleged in this Complaint;

d)    the manner and means of the conspiracy;

e)    whether the alleged contract, combination or conspiracy violated Section 1 of the Sherman Act;

f)    whether Defendants and their co-conspirators fraudulently concealed their conspiracy;

g)    the effect of Defendants' contract, combination or conspiracy on the prices paid by Plaintiffs and the members of the class for flash memory during the Class Period;

h)    whether Defendants' conduct violates the antitrust, unfair competition and consumer protection laws alleged below;

i)    the appropriate measure of damages sustained by Plaintiff and other members of the Class; and

j)    the appropriateness of injunctive relief to restrain future violations.

24.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it will allow Plaintiff and the Class members to pursue claims that would be uneconomical to pursue individually and will promote judicial economy and

efficiency. A class action will also eliminate any risk of varying or inconsistent verdicts. This class action likely presents no difficulties in its management that would preclude maintenance as a class action.

25.    Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class.

## **BACKGROUND**

### **The Flash Memory Market**

26.    Flash memory is a non-volatile type of computer memory that can be electronically erased and reprogrammed. Unlike other types of memory, flash memory retains data even after power is turned off. There are two types of flash memory commonly used today. They are NAND and NOR flash memory. NOR flash memory is best suited for code storage and execution, while NAND memory, which is smaller and cheaper, is best suited to handle data storage such as pictures, music, or data files. NAND flash memory is used in, among other things, thumb drives, digital cameras, music players, gaming platforms, and personal computers. NOR flash memory is not part of this case.

27.    Flash memory is a different product than SRAM and DRAM because it does not need continuous power in order to store data, and Plaintiff asserts no claims herein with regard to SRAM and DRAM.

28.    Between 2001 and 2002, the total flash memory market increased 4% to 7.8 billion dollars, and grew to $10.8 billion in 2005. Worldwide flash memory revenue is expected to top $20 billion annually by 2010.

29.    The flash memory market is conducive to facilitating the implementation and maintenance of a horizontal price-fixing conspiracy such as the one alleged by the Plaintiff herein

inasmuch as it is oligopolistic in nature due to prohibitive manufacturing costs and technological barriers to entry.

30.    Samsung is the clear market leader.  According to the "Memory Market Backgrounder" for 2006, in 2005, over 96% of the flash memory market was controlled by 5 entities (Samsung 52.9%, Toshiba 21.9%, Hynix 12.7%, Renesas 6.8%, and Micron 2.2%.  Thus, throughout the Class Period, Defendants accounted for a large portion of all flash memory production in the United States.

31.    According to a September 4, 2007, Bloomberg.com article Defendants Samsung, Toshiba and SanDisk collectively control approximately 74% of the market share for NAND flash memory.[1]  Beginning in approximately 2000 SanDisk and Toshiba have had a joint manufacturing venture called FlashVision.  FlashVision does not sell flash memory, rather 50% of the output goes to Toshiba and the other 50% goes to SanDisk.

32.    Flash memory is a homogenous product sold by Defendants and their co-conspirators based on price.  The flash memory industry in the United States is also highly concentrated, facilitating price coordination of flash memory among the major manufacturers thereof.

## ANTICOMPETITIVE CONDUCT

### Investigations into the Flash Memory Industry

33.    The market structure allowed Defendants to maintain and police their cartel through price signaling, among other methods.  On March 20, 2006, Hynix warned investors that the prices of NAND flash memory could fall as much as 50% for the year.  The very next day, Samsung disagreed and reassured the market that prices would recover and stabilize.  As of August 2006, prices reportedly stabilized, in part, as a result of reduced stocks from

---

[1] http://www.bloomberg.com/apps/news?pid=20601101&sid=ap8Ftas32xCM&refer=japan

manufacturers. "Apple to spur NAND Flash Market, firm says," *Electronic News*, August 9,

2006.

34.    One commentator noted the pervasiveness of cartel activity among the Defendants

and others within the overall semiconductor industry: "'If the DOJ wanted to, it could just go

down every line in the semiconductor industry and find the same issue,' said Gartner Inc. analyst

Richard Gordon. 'That's because there are relatively few number of suppliers in the chip industry

and an open flow of communication between competitors and customers, who may not define

price fixing the same way the DOJ does,' he said." (http://www.computer

world.com/article.do?command=viewArticleBasic&taxonomyName=government&articleId=900

556&taxonomyId=13&instrc=kc_top).

35.    Third-party information sources, such as DRAMeXchange (found at

<http://www.dramexchange.com>), also allow Defendants to contemporaneously track each

other's Flash Memory prices.

36.    Collusive behavior within the highly concentrated Flash Memory market is also

facilitated by membership of Defendants in the numerous trade organizations within the industry.

All of the Defendants are members of the Joint Electron Device Engineering Council ("JEDEC")

Solid State Technology Association, a standard-setting group for solid-state technologies, such as

Flash Memory. Another group, the Open NAND Flash Interface ("ONFI") group, was formed to

meet and discuss standards and production of NAND Flash products. The ONFI Group has been

in talks with Samsung with the aim of having Samsung join as a member.

37.    In addition, Defendants had ample opportunities to meet over the years at various

electronics conventions and other industry activities and expos across the world to conduct cartel

activities. For example, Renesas, Samsung, Toshiba and others, or their affiliates, are members

of the CompactFlash Association which was founded in 1995 as "a non-profit, mutual-benefit"

10

CLASS ACTION COMPLAINT

association to promote various forms of flash memory. Over the years, CompactFlash members have met in Japan, Germany, the United Kingdom and the United States.

38.     All of the above opportunities to exchange and monitor Flash Memory pricing information allowed Defendants to communicate their intended prices for Flash Memory to each other throughout the Class Period. These conversations were not simply the sharing of publicly available information. Rather, Defendants communicated with each other prior to price moves and collected competitive information similar to the pattern seen in the DRAM and SRAM markets. This information sharing was intended to, and in fact did, cause the price of Flash Memory to be stabilized and/or artificially inflated in violation of antitrust laws.

39.     There is also a great deal of cross-licensing and many cooperative arrangements in the Flash Memory industry, creating additional opportunities for collusive activity. By way of example, SanDisk announced in a press release dated 8/19/2002 that it had signed cross license and supply agreements concerning flash memory technology with Samsung.

40.     Other cooperative arrangements include joint ventures, which are common throughout the industry. For example, in March of this year, SanDisk announced that it had signed an agreement with Hynix for a joint venture to manufacture memory components and sell NAND memory system solutions. At about the same time, SanDisk also entered into a cross-licensing agreement with Hynix that covers NAND flash memory products. (http://www.streetinsider.com/Basic+Content/INTERVIEW:+SanDisk, Hynix+Plan+New+Flash+Memory+Plan/2819007.html). SanDisk has also had long-standing joint ventures with Toshiba during the Class Period; *see, e.g.,* 2006 Annual Report at 8 ("We and Toshiba have entered into several business ventures . . . With these ventures, we and Toshiba collaborate in the development and manufacture of NAND flash memory products.").

41.     As a result of Defendants' conspiracy, prices for Flash Memory have been at

11

supra-competitive levels from at least 1999 through the present.  Prior to 1999, the average selling price for all Flash Memory was declining.  In or around 2000, the aggregate average price of Flash Memory stabilized and increased.

42.    While average Flash Memory prices were declining, the cartel created by Defendants operated to mitigate those declines so that prices were still at supra-competitive levels.  Defendants' collusive activity still continues and has had the effect of keeping prices at supra-competitive levels. Nam Kim, an analyst at iSupply Corp., a market research firm, said that after falling sharply in the five earlier quarters, NAND prices showed an unusual 5 percent increase in the second quarter of 2007 and are expected to climb an additional 8 percent in the third quarter, before declining again in the fourth quarter. He said the second-quarter price rise seemed to come because manufacturers added only a small amount of new production capacity.

43.    The trend in the average prices of Flash Memory is similar to contemporaneous price movement in the DRAM market.  The pricing of, and behavior of participants in, the DRAM and SRAM markets during this period is currently the subject of a price-fixing investigation by the Antitrust Division of the U.S. Department of Justice ("DOJ").  Several of the Defendants named herein are either currently the subject of the DRAM or SRAM investigation, or have pled guilty to price-fixing charges with respect to DRAM.  Samsung pled guilty to price-fixing in the DRAM market during the period from 1999 to 2002 and paid substantial fines for those unlawful activities ($300 million).

44.    On information and belief, in August 2007, the Antitrust Division of the United States Department of Justice ("DOJ") sent subpoenas to the Defendants in connection with an investigation of antitrust activities in the flash memory industry.  Amongst the companies being investigated, Samsung has already pled guilty to price-fixing in the DRAM industry and has paid substantial fines to the DOJ for those unlawful activities ($300 million).

CLASS ACTION COMPLAINT

45.    On September 14, 2007, SanDisk filed an 8-K report with the SEC.  SanDisk's 8-K reported that the company had received a subpoena from the DOJ concerning an investigation into "possible antitrust violations in the NAND flash memory industry."

46.    Additionally, in its September 14, 2007 SEC filing SanDisk acknowledged that it is the subject of an investigation by the Canadian Competition Bureau as part of the Bureau's "industry-wide investigation" of possible anti-competitive conduct by the suppliers of flash memory chips to Canada.

47.    On September 15, 2007, the Wall Street Journal reported that the DOJ had launched an antitrust investigation into the flash memory market; reporting that Samsung, Toshiba, and SanDisk had received subpoenas.  A spokesperson for Toshiba reported that the probe appears to be "industry-wide."  All of the Defendants stated that they would cooperate with the probe.

## INTERSTATE TRADE AND COMMERCE

48.    Defendants and their co-conspirators manufacture and sell flash memory in a continuous and uninterrupted flow to customers (including Plaintiff and the Class) located in states other than those in which Defendants manufacture and distribute flash memory.

49.    The business activities of the Defendants and their co-conspirators that are the subject of this Complaint were within the flow of, and substantially affected, interstate and foreign trade and commerce of the United States.  The conduct of Defendants and their co-conspirators has directly and substantially restrained such trade and commerce.

## ANTICOMPETITIVE EFFECTS

50.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

    a.    prices for flash memory and products that incorporate flash memory

13

technology have been fixed, raised, maintained, or stabilized at artificially high and non-competitive levels;

b.    buyers of flash memory products have been deprived of the benefits of free and open competition in their purchases; and

c.    competition in the production and sale of flash memory has been restrained, suppressed, and eliminated.

## DAMAGES

51.    During the relevant period, Plaintiff and members of the Class purchased flash memory products or products containing flash memory.  As a result of Defendants' illegal conduct, Plaintiff and members of the Class were compelled to pay, and did pay, artificially inflated prices for flash memory.  Those prices were, and are, substantially greater than the prices they would have paid absent the illegal agreement, combination, conspiracy, and other unlawful conduct alleged herein, because they were deprived of the opportunity to:  (1) pay lower prices for flash memory; and (2) enjoy the natural innovations that arise from a purely competitive market.  Members of the Class have sustained substantial losses and damage in the form of overcharges.  The full amounts, forms and components of such damages will be calculated after discovery and upon proof at trial.

52.    Flash memory is also a stand-alone product.  It is not always subsumed within, or a part, of another product.  When a consumer purchases Flash memory, they can do so by buying the product itself, not another product of which Flash memory is a component.  For that reason, determination of the amount by which Plaintiff and the Class suffered antitrust damages is not complicated by the need to determine the extent to which Defendants' price-fixing conduct inflated the price of various components:  one need only examine the extent to which Flash memory card prices were inflated.

14

**FRAUDULENT CONCEALMENT**

53.     The running of any Statute of Limitations has been suspended with respect to any claims which the Plaintiff and other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment.  Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination, conspiracy, and acts in furtherance thereof from the Plaintiff and the Class members.

**COUNT I**

**VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT**

54.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

55.     Beginning at least as early as January 1, 1999 and continuing until the present, the exact dates being unknown to the Plaintiff, Defendants and their co-conspirators have engaged in conduct that manipulated the price at which they sell flash memory in the United States and elsewhere resulting in the prices paid for such goods being artificially inflated.

56.     The Defendants and their co-conspirators have engaged in a continuing contract, combination or conspiracy in unreasonable restraint of interstate and foreign trade and commerce in violation of §1 of the Sherman Act, 15 U.S.C. §1.  The Defendants and their co-conspirators agreed among themselves to fix and maintain prices for flash memory in the United States and elsewhere.

57.     Upon information and belief, the Defendants, through their officers, directors and employees, effectuated the aforesaid contract, combination or conspiracy by and among themselves and their co-conspirators, by among other things:

a)     participating in meetings and conversations including through various trade associations and committees, to discuss the prices of and/or allocate the market for flash memory in the United States;

b)     agreeing, during those meetings and conversations, to charge prices at certain levels and otherwise increase or maintain prices of flash memory sold in the United States and elsewhere;

c)     issuing price announcements and quotations in accordance with the agreements reached; and

d)     selling flash memory to consumers in the United States at supra-competitive prices.

58.     The Defendants have participated in one or more overt acts in furtherance of the conspiracy alleged above, and have participated in the conspiratorial activities described above.

59.     The aforesaid combination and conspiracy has had the following effects, among others, in the United States and elsewhere, and its effects were felt by Plaintiff and the Class members in the United States and elsewhere:

a)     price competition in the sale of flash memory by Defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States and elsewhere;

b)     prices for flash memory sold by Defendants and their co-conspirators have been raised, fixed, maintained or stabilized at artificially high and noncompetitive levels throughout the United States and elsewhere; and

c)     Plaintiff has been deprived of the benefit of free and open competition. by one or more of the Defendants' and/or co-conspirators' affirmative acts, including the acts in furtherance of the conspiracy.

60.     As a direct and proximate result of the conspiracy, Defendants have restrained competition and injured Plaintiff and each Class member in that each has paid a higher price for flash memory than they would have paid absent the concerted unlawful activity.

61.     The conduct of Defendants and their co-conspirators constitutes a *per se* violation of §1 of the Sherman Act 15 U.S.C. §1.

62.     In the alternative, the conduct of Defendants and their co-conspirators constitutes an unreasonable restraint of trade in violation of §1 of the Sherman Act 15 U.S.C. §1.

## COUNT II

**VIOLATIONS OF STATE ANTITRUST AND UNFAIR COMPETITION LAWS**

63.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

64.     The foregoing conduct of Defendants is also in violation of the following state antitrust laws and unfair competition laws for the same reasons as alleged in the foregoing paragraphs:

| | |
|---|---|
| Arizona: | Ariz. Rev. Stat. §§ 44-1401, *et seq.* |
| California: | California Bus. & Prof. Code §16700, *et seq.* |
| District of Columbia: | D.C. Code Ann § 28-4501, *et seq.*. |
| Iowa: | Iowa Code Ch. 553, §§ 553.1, *et seq.* |
| Kansas: | Kan. Stat. Ann. §§ 50-101, *et seq.* |
| Maine: | Me. Rev. Stat. Ann. Tit. 10, §§ 1101, *et seq.* |
| Michigan: | Mich. Comp. Laws Ann. §§ 445.771, *et seq.* |
| Minnesota: | Minn. Code Ann. §§ 325D.49, *et seq.* |
| Mississippi: | Miss. Code Ann. §§ 75-21-1, *et seq.* |
| Nebraska: | Nebraska Rev. Stat. §§ 59-801, *et seq.* |

17

| | |
|---|---|
| Nevada: | Nev. Rev. Stat. Chapter 598A.010, *et seq.* |
| New Mexico: | N.M. Stat. Ann §§ 57-1-3, *et seq.* |
| New York: | N.Y. Gen. Bus. Law §§ 340, *et seq.* |
| North Carolina: | N.C. Gen. Stat. §§ 75-1, *et seq.* |
| North Dakota: | N.D. Cent. Code §§ 51-08.1-01, *et seq.* |
| South Carolina: | S.C. Code Ann. §§ 39-3-10 |
| South Dakota: | S.D. Codified Laws Ann. §§ 37-1, *et seq.* |
| Tennessee: | Tenn. Code Ann. §§ 47-25-101, *et seq.* |
| Vermont: | 9 Vermont §2451, *et seq.* |
| West Virginia: | W. Va. Code §§ 47-18-1, *et seq.* |
| Wisconsin: | Wisc. Stat. Ann. §§ 133.01, *et seq.* |

65.    Class members in each of the states listed above paid supra-competitive, artificially inflated prices for flash memory.  As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in that they paid more for flash memory than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### COUNT III

### VIOLATIONS OF STATE CONSUMER PROTECTION AND UNFAIR TRADE PRACTICES LAWS

66.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

67.    The foregoing conduct of Defendants is also in violation of the following State Consumer Protection and Unfair Competition laws for the same reasons as alleged in the foregoing paragraphs:

| | |
|---|---|
| Alaska: | Alaska Stat. §45.50.471, *et seq.* |
| Arkansas: | Arkansas Code §4-88-101, *et seq.* |

18

| | |
|---|---|
| California: | California Bus. & Prof. Code §17200, *et seq.* |
| District of Columbia: | District of Columbia Code §28-3901, *et seq.* |
| Florida: | Florida Stat. §501.201, *et seq.* |
| Idaho: | Idaho Code §48-601, *et seq.* |
| Kansas: | Kansas Stat. §50-623, *et seq.* |
| Maine: | 5 Maine Rev. Stat. §205, *et seq.* |
| Massachusetts: | Mass. Gen. L. c. 93A §1, *et seq.* |
| Montana: | Montana Code §30-14-101, *et seq.* |
| Nebraska: | Nebraska Rev. Stat. §59-1601, *et seq.* |
| Nevada: | Nev. Rev. Stat. Chapter 598A.0903, *et seq.* |
| New Hampshire: | N.H. Rev. Stat. § 358-A:1, *et seq.* |
| New Mexico: | New Mexico Stat. §57-12-1, *et seq.* |
| New York: | New York Gen. Bus. Law §349, *et seq.* |
| North Carolina: | North Carolina Gen. Stat. §75-1.1, *et seq.* |
| North Dakota: | N.D. Cent. Code §§51-15-01, *et seq.* |
| South Dakota: | S.D. §37-24-1, *et seq.* |
| Tennessee: | Tenn. Code Ann. §§ 47-18-101, *et seq.* |
| Utah: | Utah Code §13-11-1, *et seq.* |
| Vermont: | 9 Vermont §2451, *et seq.* |
| West Virginia: | West Virginia Code §46A-6-101, *et seq.* |
| Wisconsin: | Wisc. Stat. Ann. §§ 100.20, *et seq.* |

68.    Class members in each of the states listed above paid supra-competitive, artificially inflated prices for flash memory.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in that they paid more for flash

memory than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### COUNT IV

### UNJUST ENRICHMENT

69.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

70.     As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched.  Defendants' unlawful acts impose barriers to entry for generic manufacturers seeking to compete in the relevant market.  Defendants have been unjustly enriched, to the detriment of Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits on their sale of flash memory products.  Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of their ill-gotten gains resulting from the overpayments for flash memory products made by Plaintiff and the Class.

71.     Plaintiff and members of the Class are entitled to damages in the amount of Defendants' ill-gotten gains resulting from Defendants' unlawful, unjust and inequitable conduct. Plaintiff and the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the Class members may make claims on a *pro rata* basis.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and all others similarly situated respectfully request:

a)      that the Court certifies a class of indirect purchasers pursuant to Federal Rule of Civil Procedure 23(b);

b)      that the unlawful combination and conspiracy alleged herein be adjudicated and decreed a *per se* violation or, in the alternative, a rule of reason violation, under §1 of the

CLASS ACTION COMPLAINT

Sherman Act, 15U.S.C. §1;

       c)     that the unlawful combination and conspiracy alleged herein be adjudicated and decreed a violation of the state antitrust and state consumer protection and/or unfair competition laws and award Plaintiff and the class members appropriate relief;

       d)     that the Plaintiff and the Class recover damages, as provided by applicable state laws and that a joint and several judgment in favor of the Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

       e)     that Plaintiff and the Class be awarded their expenses and costs of suit including reasonable attorneys' fees to the extent provided by law;

       f)     that Plaintiff and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

       g)     that this Court permanently enjoin all continuing and future unlawful activity by Defendants in violation of the antitrust laws; and

       h)     that Plaintiff be awarded such additional relief as the Court may deem proper.

DATED: October 19, 2007

Respectfully submitted,

By _____

Jon T. King
**THE FURTH FIRM LLP**
225 Bush Street, 15th Floor
San Francisco, CA 94104-4249
Telephone:   (415) 433-2070
Facsimile:   (415) 982-2076

CLASS ACTION COMPLAINT

Jayne A. Goldstein
**MAGER & GOLDSTEIN LLP**
1640 Town Center Circle
Suite 216
Weston, FL 33326
Telephone:    (954) 515-0123
Facsimile:    (954) 515-0124

Natalie Finkelman Bennett
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLC**
35 East State Street
Media, PA 19063
Telephone:    (610) 891-9880
Facsimile:    (610) 891-9883

***Counsel for Plaintiffs and Putative Class***

CLASS ACTION COMPLAINT

1

## JURY TRIAL DEMAND

2

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

3

by jury for all issues so triable.

4

DATED: October 19, 2007

5

Respectfully submitted,

6

By

7

Jon T. King

**THE FURTH FIRM LLP**

8

225 Bush Street, 15th Floor

9

San Francisco, CA 94104-4249

Telephone:    (415) 433-2070

10

Facsimile:    (415) 982-2076

11

Jayne A. Goldstein

12

**MAGER & GOLDSTEIN LLP**

1640 Town Center Circle

13

Suite 216

Weston, FL 33326

14

Telephone:    (954) 515-0123

Facsimile:    (954) 515-0124

15

16

Natalie Finkelman Bennett

**SHEPHERD, FINKELMAN, MILLER**

17

**& SHAH, LLC**

35 East State Street

18

Media, PA 19063

Telephone:    (610) 891-9880

19

Facsimile:    (610) 891-9883

20

***Counsel for Plaintiffs and Putative Class***

21

22

23

24

25

26

27

28

23